UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MIGUEL MICHAEL ALANIZ,<br><br>Defendant. | Case No. 1:21-cr-00243-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

On May 16, 2022, Defendant Mike Alaniz entered a plea of guilty to all counts of a four-count indictment that charged him with three counts of distribution of cocaine (Counts One through Three), and one count of possession with the intent to distribute cocaine (Count Four), all in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Dkt. 1; Dkt. 27. On August 18, 2022, the Court sentenced Mr. Alaniz to a term of imprisonment of fifteen months on each of Counts One through Four, to be served concurrently. Dkt. 42. Mr. Alaniz has filed a notice of appeal from that sentence. Dkt. 44. Mr. Alaniz has also filed a motion for release from custody pending appeal (Dkt. 48) which the government opposes and which is currently before the Court. For the reasons discussed below, the Court denies the motion.

# BACKGROUND

Mr. Alaniz did not object to the portion of the presentence report setting forth the following offense conduct:

> In May 2020, the Idaho State Police opened an investigation into the defendant's suspected dealing of cocaine in the Jerome, Idaho area. In January 2021, a confidential informant (CI) implicated the defendant in reporting that the CI had purchased up to one and a half ounces of cocaine on several occasions and that he commonly travels to Las Vegas, Nevada, approximately once a month to pick up pounds of cocaine. The CI advised he had accompanied the defendant on one such trip when the defendant picked up approximately a "kilo" (2.2 pounds) of cocaine.
>
> On March 22, 2021, the CI alerted police that the defendant was in Nevada picking up pounds of cocaine to distribute to the Jerome, Idaho area. Police later learned the defendant had returned to Idaho on March 27, 2021.
>
> On April 1, 2021, under the guidance of police, the CI contacted the defendant to arrange the purchase of cocaine. Later that day, the CI conducted a controlled purchase of 28.04 grams (1 ounce) of cocaine from the defendant for $1,200. Laboratory analysis confirmed the substance was positive for cocaine, with a weight of 28.04 grams.
>
> On April 19, 2021, the CI contacted the defendant to arrange the purchase of cocaine. Later that day, the CI conducted a controlled purchase of 27.85 grams (1 ounce) of cocaine from the defendant for $1,200. Several children (the defendant's nephew and the defendant's four children) were present during the interaction between the CI and the defendant. Laboratory analysis confirmed the substance was positive for cocaine, with a weight of 27.85 grams.
>
> On May 18, 2021, the CI contacted the defendant to arrange the purchase of cocaine. Later that day, the CI conducted a controlled purchase of 108.61 grams (4 ounces) of cocaine from the defendant

for $1,000 an ounce. Laboratory analysis confirmed the substance was positive for cocaine, with a weight of 108.61 grams.

Later that day, the defendant was driving a black 2017 Chevrolet Camaro, with his father and three of his young children riding as passengers. Police made contact with the defendant, and he was arrested for three counts of trafficking cocaine. Inside of his vehicle was a loaded Sig brand .357 caliber handgun. The handgun was located in between the passenger seat and the center console. The defendant's father informed police the handgun belonged to the defendant. Police ran the firearm and it was not reported stolen.

Shortly thereafter, police searched the defendant's residence and found a Remington hunting rifle in the living room. In the kitchen, police located marijuana, paraphernalia, and a digital scale. Police also located a bag of cocaine in the pantry and two additional bags of cocaine inside a safe within the kitchen. Laboratory analysis confirmed the three bags of cocaine weighed a combined total of 47 grams. Within the master bedroom closet, police located pipes, marijuana residue, and a digital scale with white powder residue on it. Police also located eleven additional firearms within the bedroom. One of the firearms (Savage 93R17) was confirmed stolen.

Later that evening, the defendant's telephone calls from the Jerome County Jail were recorded. He first contacted an unknown male and said, "It's Mike; they got me. Jared turned me in, fucking Jared, piece of shit." The defendant then contacted his wife and said, "It is probably going to be some time in here, three to seven probably." The defendant asked his wife what exactly police took from their residence and she responded, "They took all your guns, they took everything, you know that little area, uh, they broke the safe open."

Dkt. 33 at 4-5 (paragraph numbering omitted).

On September 15, 2021 a four-count Indictment was returned charging Mr. Alaniz with three counts of distribution of cocaine and one count of possession

MEMORANDUM DECISION AND ORDER - 3

with the intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Dkt. 1. On May 16, 2022, Mr. Alaniz entered a plea of guilty to all four counts in the Indictment without a plea agreement. Dkt. 27.

Prior to sentencing, Mr. Alaniz objected to the Presentence Report applying a two-level enhancement under U.S.S.G. § 2D1.1(b)(1). Dkt. 32. He argued that the enhancement should not apply to his case because it was clearly improbable that the weapon was connected with the offense. Mr. Alaniz further argued that applying the enhancement would violate his Second Amendment rights under the test the Supreme Court announced in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).

At the sentencing hearing, after hearing the arguments from the parties, the Court overruled Mr. Alaniz's objection, applied U.S.S.G. § 2D1.1(b)(1)'s two-level enhancement, determined the guideline range to be eighteen to twenty-four months, and sentenced Mr. Alaniz to a term of imprisonment of fifteen months on each of the four counts of conviction, to be served concurrently. Dkt 43. Mr. Alaniz has filed a notice of appeal and seeks release pending the appeal. Dkt. 44; Dkt. 48.

## LEGAL STANDARD

A person convicted of a federal crime and sentenced to prison must be

ordered detained pending appeal unless he demonstrates by clear and convincing evidence that he is "not likely to flee or pose a danger to the safety of any other person or the community if released"; and "that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in" reversal, an order for a new trial, a non-custodial sentence, or "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b)(1).

Notwithstanding the foregoing, the Court must detain a defendant convicted of an offense described in 18 U.S.C. § 3142(f)(1)(A), (B), or (C), *see* 18 U.S.C. § 3143(b)(2), unless the defendant clearly demonstrates that there are exceptional circumstances making his detention pending resolution of his appeal unreasonable, *see* 18 U.S.C. § 3145(c).

## ANALYSIS

### A. Mr. Alaniz qualifies for release pending appeal under § 3143(b).

Applying the standards of 18 US.C. § 3143(b), the Court first notes that it does not find the appeal is for the purpose of delay. The Court also finds that Mr. Alaniz is neither a flight risk nor a danger to the community. Mr. Alaniz was on pretrial and presentence release and complied with the conditions of release. He does not have any failures to appear for court in his criminal history. He has a

supportive family. And, he has apparently managed his drug addiction while on pretrial and presentence release. The Court finds that that totality of these circumstances show that Mr. Alaniz is not a flight risk. Moreover, there is no indication that he is a risk to the community.

The Court will thus turn to whether the appeal raises a substantial question of law or fact likely to result in reversal. The term substantial "defines the level of merit required in the question presented," and a "substantial question is one that is fairly debatable or fairly doubtful; it is one of more substance than would be necessary to a finding that it was not frivolous." *United States v. Montoya*, 908 F.2d 450, 450 (9th Cir. 1990) (internal quotation marks and citations omitted). Mr. Alaniz argues that the Court's overruling his objection that the application of U.S.S.G. § 2D1.1(b)(1) was unconstitutional under *Bruen* raises a substantial question of law or fact likely to result in reversal on appeal.

No reasonable jurist could deny that in *Bruen* upended the constitutional framework for reviewing civil and criminal firearm regulations. The finer points and applications of the Supreme Court's new framework will need to be worked out through cases over time. Against that background—a revolutionary constitutional framework that has not been refined through caselaw—Mr. Alaniz's appeal raises a substantial question. For instance, a reasonable jurist could

**MEMORANDUM DECISION AND ORDER - 6**

narrowly conclude that the "clearly improbable" standard for applying the enhancement does not keep with the nation's traditions of firearm regulation. U.S.S.G. § 2D1.1(b)(1) Cmt. 11; *United States v. Baldon*, 956 F.3d 1115, 1127 (9th Cir. 2020). *See also United States v. Quiroz*, Case No. 4:22-cr-104 at *12 (W.D. Tex. Sept. 19, 2022) (citing historical evidence that "even 'traitors' unwilling to swear allegiance to the Crown retained their weapons in colonial America.).

Moreover, Mr. Alaniz shows that if he prevails on appeal, he may be in the position of having overserved the sentence he would receive under the correct guidelines. Even though Mr. Alaniz received a below-guidelines sentence, if he prevails on appeal, the guideline range will fall within Zone C of the sentencing table, meaning that the guidelines will authorize a sentence of 6 months in prison with 6 months of home confinement. USSG § 5C1.1(d)(2). That is obviously substantially lower than the sentence imposed and is sufficient to meet the standard of § 3143(b).

> **B.  Mr. Alaniz is subject to mandatory detention and has not demonstrated exceptional reasons why his detention would not be appropriate.**

Mr. Alaniz was convicted of crimes within the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, which are punishable by a maximum term of

imprisonment of 20 years, *see* 21 U.S.C. § 841(b)(1)(C). Accordingly, the Court must detain Mr. Alaniz pending appeal, *see* 18 U.S.C.§§ 3142(f)(1)(C), 3143(b)(2), unless Mr. Alaniz clearly demonstrates that there are exceptional circumstances why his detention would not be appropriate, *see* 18 U.S.C. § 3145(c).

"[A] wide range of factors may bear upon the analysis" of whether a defendant has clearly shown "exceptional circumstances," and the Court has broad discretion "to consider all the particular circumstances of the case before it and draw upon its broad 'experience with the mainsprings of human conduct.'" *United States v. Garcia*, 340 F.3d 1013, 1018 (9th Cir. 2003) (citation and quotation marks omitted). "[T]he court should examine the totality of the circumstances and, on the basis of that examination, determine whether, due to any truly unusual factors or combination of factors . . . it would be unreasonable to incarcerate the defendant prior to the appellate court's resolution of his appeal." *Id.* at 1019.

Mr. Alaniz contends that he has met this standard because (1) the Court imposed a relatively short sentence and detention would destroy the available appellate remedy, and (2) the defendant's crime was aberrant conduct.

### 1. Length of Sentence

"The length of the prison sentence—both the maximum and the sentence imposed—may [] be relevant" to the exceptional circumstances determination for

**MEMORANDUM DECISION AND ORDER - 8**

several reasons. *Garcia*, 340 F.3d at 1019.

> First, the length of the sentence may be a proxy for the seriousness of the crime. Second, the primary purpose of the Mandatory Detention Act—to incapacitate [certain drug offenders]—is only weakly implicated where the sentence imposed is very short, because regardless of whether the defendant is released pending appeal, he will soon be free. Third, in such circumstance, the defendant could be forced to serve most or all of his sentence before his appeal has been decided. Incarcerating such a defendant immediately upon conviction could substantially diminish the benefit he would ordinarily receive from an appeal.

*Id*. (citation omitted).

Here, the maximum term of incarceration is 20 years for each of Mr. Alaniz's convictions, demonstrating the seriousness of Mr. Alaniz's conduct of distribution of cocaine on three separate occasions, and possession with intent to distribute cocaine on a fourth occasion.

As to the length of the sentence imposed, the Court applied the safety valve provision of 18 U.S.C. § (f)(1)-(5) and U.S.S.G. § 5C1.2 to reduce Mr. Alaniz's offense level, resulting in a guideline range of eighteen to twenty-four months, and imposed a sentence below the guideline range of fifteen months. Thus, Mr. Alaniz's sentence is relatively short.

The Court recognizes that Mr. Alaniz is a nonviolent, low-level drug dealer. However, Mr. Alaniz engaged in three different transactions during which he distributed, or possessed with intent to distribute, cocaine. Further, as discussed at

**MEMORANDUM DECISION AND ORDER - 9**

sentencing, Mr. Alaniz distributed cocaine from a truck parked in his driveway outside of his residence, where children lived. On one occasion the drug purchaser came into the house while children were present, gave Mr. Alaniz cash for the drugs, and discussed future drug transactions.

The Court also recognizes that because of the length of Mr. Alaniz's sentence, he could be forced to serve most or all of his sentence before his appeal is decided, and that this could substantially diminish the benefit he would ordinarily receive from an appeal. Further, the Court recognizes that Mr. Alaniz complied with pretrial and presentence release conditions. However, the Court does not find that these factors constitute exceptional circumstances making it unreasonable to incarcerate Mr. Alaniz prior to the resolution of his appeal.

### 2. Aberrant Conduct

"[O]ne exceptional circumstance that might justify release under § 3145(c) would be that the defendant's criminal conduct was aberrational." *Garcia*, 340 F.3d 1013, 1019 (9th Cir. 2003). The Ninth Circuit has indicated that, in the context of § 3145(c), aberrant conduct basically means the crime was a one-off. The Circuit offered paradigmatic example of aberrational conduct as "[a] defendant with no prior history of violence [who] may have acted violently, but uncharacteristically, in reaction to an unusually provocative circumstance." *Id.*

**MEMORANDUM DECISION AND ORDER - 10**

The Court cannot find that Mr. Alaniz's crimes were aberrational. Mr. Alaniz conducted several drug transactions over six weeks. And for approximately a year, investigators collected evidence that indicated that Mr. Alaniz was involved in drug trafficking. Criminal activity of this sort cannot be considered an anomaly. Granted, as Mr. Alaniz argues, in the scope of his thirty-year life, this criminal activity may in fact have been a relatively short period. But that is not enough to constitute an exceptional reason.

The Court will deny the motion for release pending appeal because Mr. Alaniz is subject to mandatory detention and has not demonstrated exceptional reasons why his detention would not be appropriate.

## ORDER

**IT IS ORDERED that:**

1. Defendant's Motion for Release Pending Appeal (Dkt. 48) is **DENIED**.

DATED: September 29, 2022

B. Lynn Winmill
U.S. District Court Judge